IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, | : : : | Civil Action No. 1:08-CV-0971 |
| Plaintiff | : : | (Chief Judge Kane) |
| v. | : : | |
| RALPH J. CAPPY, et al., | : : | |
| Defendants | : | |

## MEMORANDUM

Pending before the Court are two motions to dismiss Plaintiff's amended complaint, the first filed by the former Chief Justice of the Pennsylvania Supreme Court Ralph J. Cappy[1] and the second filed by Paul J. Killion, Paul J. Burgoyne, and Raymond S. Wierciszewski, all counsel to the Disciplinary Board of the Supreme Court of Pennsylvania (the "Disciplinary Defendants"). For the reasons that follow, the motions will be granted and the case closed.

I. **PROCEDURAL AND FACTUAL BACKGROUND**

The case pending before the Court relates, in part, to an action that Plaintiff League of Women Voters of Pennsylvania ("Plaintiff" or "the League") first initiated in October 2005, together with Common Cause of Pennsylvania and several individuals. That action was brought against Pennsylvania Governor Edward G. Rendell and then-Pennsylvania Treasurer Robert P. Casey, Jr., challenging as unconstitutional a Pennsylvania statute that conferred upon legislators,

---

[1] Ralph Cappy died on May 1, 2009. Defendant Cappy's counsel filed and served a suggestion of death on May 7, 2009. (Doc. No. 46.) Although Plaintiff has 90 days from that date in which to substitute a party in Mr. Cappy's place, see Fed. R. Civ. P. 25(a)(1), there is no reason to delay adjudication of the pending motions to allow for a potential Rule 25(a)(1) motion, as substitution is irrelevant to the salient issue of whether Plaintiff has brought viable claims against any defendant.

judges, and other elected officials a pay raise.  In their second amended complaint filed in the Common Cause case in February 2006, the League and other plaintiffs added then-Chief Justice of the Pennsylvania Supreme Court, Ralph J. Cappy.  As the Pennsylvania General Assembly had repealed the pay-raise legislation by the time the League and its co-plaintiffs filed their second amended complaint, the claims charged defendants from the executive, legislative, and judicial branches of government with conspiring to enact legislation unlawfully and to prevent subsequent legal challenges to the pay-raise law.

All defendants to the Common Cause action moved to dismiss the second amended complaint and, following oral argument, the Court entered an order on June 12, 2006, granting the motions on the grounds that (1) the plaintiffs' claims were moot; (2) the plaintiffs lacked standing to bring the constitutional claims asserted; (3) the plaintiffs failed to state cognizable legal claims; and (4) the Court lacked jurisdiction to grant the relief requested.  See Common Cause of Pennsylvania v. Pennsylvania, 447 F. Supp. 2d 415, 422-38 (M.D. Pa. 2006).  The plaintiffs appealed the Court's ruling to the United States Court of Appeals for the Third Circuit.  In a lengthy and thorough precedential decision issued on February 26, 2009, the Third Circuit affirmed the Court's order dismissing the Common Cause action, taking care to outline the bedrock principles that rendered Plaintiff's claims noncognizable in this Court.  See Common Cause v. Pennsylvania, 558 F.3d 249 (3d Cir. 2009).

Without waiting for the disposition of its appeal to the Third Circuit, the League commenced the instant lawsuit on May 19, 2008, solely against Ralph C. Cappy, who by this time was no longer a justice on the Pennsylvania Supreme Court.  (Doc. No. 1.)  Although the complaint contained numerous incendiary allegations regarding political and judicial corruption,

the complaint did little more than republish, rehash, and expand upon the scurrilous allegations firmly rejected by this and the appellate court as a basis for relief. In essence the League alleged that Defendant Cappy engaged in backroom dealing with state legislators in an effort to secure a judicial pay raise in exchange for agreeing to make certain judicial rulings in pending cases. Embellishing the factual allegations of the previous lawsuit, Plaintiff alleged that one of the cases that Defendant Cappy agreed to "fix" was an appeal that the League and other plaintiffs had filed to challenge the constitutionality of the Commonwealth's recently enacted statute authorizing casino gaming ("Act 71"). Plaintiff avers that Defendant Cappy's alleged conduct violated Plaintiff's right to due process under the law. In the complaint, Plaintiff requested entry of an order declaring that Defendant Cappy violated Plaintiff's due process rights and requested payment of fees and costs.

On July 22, 2008, Defendant Cappy moved to dismiss the complaint, arguing that the Court was without jurisdiction to consider Plaintiff's claims because Plaintiff lacked standing to assert them, the claims were moot, and the claims were barred by the Rooker-Feldman doctrine. Additionally, Defendant Cappy argued that even if the Court had jurisdiction, Plaintiff failed to state a claim upon which relief could be granted because all asserted claims were barred by collateral estoppel and because Plaintiff improperly sued a former Chief Justice of the Pennsylvania Supreme Court in his official capacity. On August 4, 2008, Plaintiff moved for an extension of time to file a brief in opposition to the motion; the Court granted the motion and directed that Plaintiff file its brief by August 18, 2008. Plaintiff subsequently filed a brief, along with a motion for leave to exceed the allowable page limitation. The brief was stricken for failure to comply with the local rules and Plaintiff's motion for leave to exceed the page

limitation was denied. Plaintiff filed nothing for approximately seven more weeks, when it filed an amended complaint.[2] The amended complaint changed virtually nothing with respect to the allegations against Defendant Cappy and did not add any claims against him; instead, the amended complaint merely added entirely unrelated claims against the Disciplinary Defendants and requested that the Court declare Rule 8.2 of the Pennsylvania Rules of Professional Conduct to be unconstitutional.[3] In essence, Plaintiff asserts that Rule 8.2(a) is unconstitutional because it: (1) "destroy[s] a hospitable forum in Pennsylvania state courts for the redress of federally protected rights against state judges" (Am. Compl. ¶ 119); (2) prevented Plaintiff from being able to file the instant case in the Pennsylvania courts and impaired Plaintiff from engaging counsel willing to file the action in the Pennsylvania state courts (Am. Compl. ¶¶ 121, 123, 125); and (3) is allegedly "vague and overbroad," both on its face and as applied (Am. Compl. ¶¶ 127, 129).[4]

---

[2] As counsel for former Chief Justice Cappy explains, Local Rule 7.6 authorizes the Court to deem unopposed any motion left unanswered. The Court declined to invoke Local Rule 7.6 in this instance, finding that judicial economy weighed in favor of concluding this lawsuit on the merits. Defendants have already expended significant resources briefing the issues, and a ruling on the merits of the motion may dissuade Plaintiff from another vexatious suit.

[3] The Court agrees with the Disciplinary Defendants that Plaintiff improperly joined them in this suit under Rule 20(a) of the Federal Rules of Civil Procedure. Review of the amended complaint confirms that the League's challenge to Rule 8.2(a) of the Pennsylvania Rules of Professional Conduct does not arise "out of the same transaction, occurrence, or series of transactions or occurrences"as the League's claims against Defendant Cappy. Fed. R. Civ. P. 20(a). Moreover, the Court does not find that there exist any questions of law or fact common to the claims against Defendants Cappy and those against the Disciplinary Defendants, which is a separate requirement for joinder. Nevertheless, there is no motion to sever before the Court.

[4] Plaintiff's constitutional challenge to Rule 8.2(a) apparently is in response to alleged remarks made by Pennsylvania Supreme Court Chief Justice Castille's to the effect that "it is not proper to say that a Supreme Court justice fixed a case unless you can prove it," and "there are consequences to be paid when you cannot prove some of the things you say." (Am. Compl. ¶ 73.) Plaintiff apparently derives from these remarks that the Chief Justice was threatening a Rule 8.2(a) sanction against Plaintiff's counsel and that the Chief Justice himself directs the initiation

In its prayer for relief, Plaintiff requests entry of an order declaring Rule 8.2(a) unconstitutional and enjoining its future performance. Plaintiff also seeks an award of costs and attorney's fees.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).

The Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), has altered the standard of review for a motion to dismiss pursuant to Rule 12(b)(6). Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). In construing the Rule 12(b)(6) standard generally, the Court required the plaintiff to provide more than a formulaic recitation of a claim's elements that amounted to mere labels and conclusions. Twombly, 550 U.S. at 555-56. Additionally, the Court held that the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The Third Circuit has held that this

---

and course of disciplinary proceedings. Plaintiff's complaint alleges no facts that establish this nexus.

5

language in Twombly applies generally to all motions brought under Rule 12(b)(6) and summed up the Twombly standard as follows: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotations and citations omitted). After Twombly, it is still true that "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. at 232 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## III. DISCUSSION

### A. Plaintiff's Claims Against Defendant Cappy Fail to State a Cognizable Case or Controversy.

#### 1. Plaintiff's Claims are Moot.

A district court has the power to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 - 2202, only "in a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. In determining whether a controversy exists, the court must examine whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler, 394 U.S. 103, 108 (1969) (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941); see also Salvation Army v. Dep't of Cmty. Affairs, 919 F.2d 183, 192 (3d Cir. 1990) ("in order to present a

justiciable controversy in an action seeking a declaratory judgment to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (quoting Steffel v. Thompson, 415 U.S. 452, 460 (1974)).

In determining whether it has been presented with an ongoing case or controversy, a federal district court must resolve questions of mootness before assuming jurisdiction over an action. DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). A case is deemed moot when "[t]he controversy between the parties has . . . clearly ceased to be 'definite and concrete.'" Id. at 317 (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937)). Courts outside of the Third Circuit have found that a declaratory action against a judge is properly considered to be moot where the challenged proceeding before such judicial officer has become final and when the judicial officer against whom the action is brought is no longer on the bench. See, e.g., Stronko v. Bergin, 843 F. Supp. 827, 829 (N.D.N.Y. 1994); Pancake v. McCarthy, 806 F. Supp. 378, 379 (E.D.N.Y. 1992).

Plaintiff's claims against Defendant Cappy were moot when the action was filed, both because Plaintiff's action before the Pennsylvania Supreme Court challenging Act 71 was final and because Defendant Cappy had retired from the Pennsylvania Supreme Court on December 31, 2007. On May 1, 2009, the untimely death of former Chief Justice Cappy extinguished even the extremely tenuous argument that Defendant Cappy might have one day returned to the bench to preside over some potential lawsuit that Plaintiff might bring sometime in the future. Nevertheless, Plaintiff has not conceded the issue.

Plaintiff tries in vain to argue that this action somehow remains a live controversy

because if the Court were to issue a declaration that former Chief Justice Cappy violated Plaintiff's right to due process, such declaration would "place all current and future judges on notice that they may not engage in defendant's conduct declared unconstitutional." (Doc. No. 27, at 10.) As Defendant Cappy rightly noted in his reply brief, this justification for the action demonstrates a fundamental misunderstanding regarding Article III jurisprudence and the limits of federal jurisdiction. Plaintiff fails to identify any legal support for its contention that federal courts can entertain moot causes of action in order to teach lessons to non-parties, and the Court is not aware of any. Moreover, Plaintiff cannot circumnavigate the Article III requirements by announcing at the outset of its brief that this case is somehow novel.[5] Regardless of whether or not Plaintiff's claims truly are novel, they are nevertheless subject to the threshold jurisdictional requirements imposed by Article III of the United States Constitution, and they fail in this regard because they are unquestionably moot.

### 2. Plaintiff Lacks Standing.

In addition to the Court lacking jurisdiction over Plaintiff's claims against Defendant Cappy because they were moot from the outset, Plaintiff also lacks standing to obtain declaratory relief, and hence another requirement of Article III is not satisfied. The Court spent considerable time addressing the fundamental requirement of Article III standing the last time the League was before this Court in the Common Cause action, and the Third Circuit thoroughly addressed the subject in affirming this Court's order dismissing the League's action in that case for lack of standing. The principles governing standing that are relevant to the instant action differ slightly

---

[5] In its brief in opposition to Defendant Cappy's motion, Plaintiff begins by announcing that "[t]his is a case of first impression. The facts of plaintiff's case have never been considered by a federal court. Plaintiff seeks to establish new law." (Doc. No. 27, at 1.)

and are discussed briefly below.

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or controversy requirement is satisfied only where a plaintiff has standing." Sprint Commc'ns Co. v. APCC Servs., Inc., 128 S. Ct. 2531, 2535 (2008). The Supreme Court has summarized the requirements of Article III standing as follows:

> [I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (i.e., a "fairly traceable" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61).

Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed. Common Cause v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009). In the context of an action seeking declaratory or injunctive relief, a plaintiff has standing to sue only if he is the party that will or is likely to be injured by the future action that he seeks to enjoin. City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983).

In this case, Plaintiff has failed to make sufficient allegations to demonstrate standing because the amended complaint fails to identify any potential injury that would be redressable by the entry of a declaratory judgment. In its efforts to address the lack of standing, Plaintiff actually makes its absence all the more apparent by explaining that the lawsuit has been brought against the former Chief Justice in order to "eliminate plaintiff's own uncertainty at the outset of potential litigation as to whether or not to abandon an otherwise valid litigation for fear that the litigation may be used by a judge to advance an agenda in ways which plaintiff would find more

objectionable than the wrongful conduct to be litigated in the case." (Doc. No. 27, at 9.) Statements such as the foregoing serve only to make clear that what Plaintiff is really seeking in this action is entry of a judgment in its favor in order to guard against what it speculates <u>may</u> be potential unconstitutional conduct that <u>might</u> occur in future cases – cases that, in any event, would not have the late Chief Justice presiding over them. Plaintiff would thus have the Court "lay down the law" as to how state judges should conduct themselves in the future so that Plaintiff can assure itself that it will receive a fair and impartial hearing should Plaintiff elect to file future actions in Pennsylvania courts.

Setting aside the question of whether such a basis could ever support a civil action in federal court, the claims against Defendant Cappy cannot be redressed in this Court where there is no possibility that Plaintiff will ever have one of its cases before Defendant Cappy. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974). <u>See also</u> <u>Green v. Mansour</u>, 474 U.S. 64, 73 & n.2 (1985) (federal court lacks jurisdiction to issue declaratory judgment that a defendant previously violated the law where the plaintiff cannot obtain further relief against such defendant). The amended complaint fails to identify any "continuing, present adverse effects" that could conceivably be redressed through issuance of a declaratory judgment. Accordingly, the Court finds that Plaintiff lacks standing to prosecute this declaratory action against Defendant Cappy.

In sum, because Plaintiff lacks standing to bring this action against Defendant Cappy and because the claims against Defendant Cappy are moot, the Court lacks jurisdiction to consider Plaintiff's action for declaratory relief and these claims will be dismissed. The Court finds

further that a second amendment to the claims would be futile and unwarranted and therefore the Court will not grant leave to amend. Because this action so clearly fails to satisfy the "case" or "controversy" requirement of Article III, the Court finds it unnecessary to reach Defendant Cappy's additional arguments in support of dismissal.

    **B.    Plaintiff's Claims Against the Disciplinary Defendants Also Fail to Satisfy Article III's Requirements.**

Plaintiff's claims against the Disciplinary Defendants also fail to satisfy the threshold requirements of Article III. As with the claims against Defendant Cappy, Plaintiff lacks standing to prosecute them because the disciplinary rule Plaintiff seeks to invalidate is inapplicable to the League. Furthermore, the Court finds that even if Plaintiff did have standing to challenge a rule of professional conduct that applies only to lawyers, the claims seeking a declaration that Rule 8.2(a) is somehow unconstitutional are plainly unripe and therefore not justiciable.

    **1.    Plaintiff Lacks Standing to Challenge Rule 8.2(a)**

As discussed above, Article III of the United States Constitution requires that a party invoking federal jurisdiction have standing derived from having a personal stake in the action, which may be established by a plaintiff alleging an injury in fact that is concrete and particularized and actual or imminent, rather than conjectural or hypothetical. See, e.g., Lujan, 504 U.S. at 560. If a party lacks standing to seek a particular form of relief, a federal court must dismiss any claim seeking such relief. City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983). In order to have the standing necessary to seek a declaratory judgment or an order enjoining future conduct, the plaintiff must be the party who will be or is likely to be injured by the future conduct. Id. at 101.

Applying these threshold considerations to this case, the Court finds that Plaintiff has not alleged a cognizable "injury in fact" because its claim against the Disciplinary Defendants is predicated upon a challenge to a rule of professional conduct that does not even apply to the League. The Pennsylvania Rules of Professional Conduct apply to, and govern the conduct of, lawyers. The language of Rule 8.2(a) in particular makes this point clear:

> A <u>lawyer</u> shall not make a statements [sic] that the <u>lawyer</u> knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to a judicial or legal office.

Pa. R. Prof. Conduct 8.2(a) (emphasis added). By its own terms, the rule that Plaintiff would have this Court invalidate does not operate to regulate the speech of associations such as the League.

To the extent that Plaintiff is trying to fashion a claim that its own First Amendment or other constitutional rights might have been violated, or might be in the future, as a result of Rule 8.2(a)'s application to lawyers, the claim fares no better. As the Disciplinary Defendants note, the League is not contending that Rule 8.2(a) somehow causes third-party lawyers to refrain from engaging in <u>speech</u> activity.[6] Instead, the League asserts that Rule 8.2(a) might conceivably discourage lawyers from filing lawsuits critical of judges in Pennsylvania's courts, though the

---

[6] Thus, the League's claims must be distinguished from the category of First Amendment actions that concern the so-called "right to hear" the speech of a willing speaker whose speech has been impermissibly chilled. See <u>Pennsylvania Family Institute, Inc. v. Black</u>, 489 F.3d 156, 165 (3d Cir. 2007) (discussing contours of First Amendment protections for listeners, including the requirement that the listener-plaintiff identify a willing speaker as a prerequisite for maintaining claim that the listener's rights have been infringed); <u>see also</u> <u>Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.</u>, 425 U.S. 748, 756 (1976) (precondition of asserting a right to receive a speaker's speech is the existence of a "willing speaker").

12

League does not contend that it has actually been affected by a lawyer's hesitation to file any actions on its behalf.[7] To the extent that Plaintiff is claiming that its right to petition in state court has been impaired by an alleged inability to find counsel willing to file claims in Pennsylvania's courts on its behalf, the Court finds no legal basis for such a claim, and Plaintiff has not identified any.[8] In sum, the Court finds that Plaintiff lacks standing to bring this claim.

The Court recognizes that courts have relaxed the standing inquiry in cases where plaintiffs have made facial challenges to a statute or regulation on the grounds that the statute or regulation impermissibly chills First Amendment activity. See Pa. Prison Society v. Cortes, 508

---

[7] Moreover, such a representation is difficult to credit in the context of a case brought by a lawyer who has exhibited no compunction about making shocking allegations in federal court against the highest ranking judicial officer of Pennsylvania's state courts in this action, as well as in the Common Cause litigation, when the late Chief Justice Cappy was presiding over the court. It is true that these suits were filed in federal court, but it is not clear how this fact makes it seem any more or less likely that a lawyer would agree to file a similar action in state court. Notably, the Middle District of Pennsylvania has adopted substantially all of the Pennsylvania Rules of Professional Conduct, including Rule 8.2(a), and these rules apply to lawyers practicing in this Court. See LR 83.23.2.

[8] Again, Plaintiff's insistence that this claim is novel or unprecedented does not save it from a standing analysis and the Court finds no basis for finding a claim that the League's rights have somehow been violated by a rule of professional conduct that restricts only false statements made by lawyers. Notably, in numerous cases outside of Pennsylvania lawyers have attempted to claim that rules such as Rule 8.2(a) violate their own right to free speech, but the courts have rejected such claims, chiefly because statements made about public officials that are made with knowledge of their falsity or with reckless disregard to their truth or falsity are not protected by the First Amendment. See, e.g., Garrison v. Louisiana, 379 U.S. 64, 78 (1964) (holding that First Amendment does not protect such speech); United States Dist. Court v. Sandlin, 12 F.3d 861(9th Cir. 1993); Notopoulos v. Statewide Griev. Comm., 890 A.2d 509, 520-21 (Conn. 2006); In re Simon, 913 So. 2d 816, 824 (La. 2005) In re Wilkins, 782 N.E.2d 985, 987 (Ind. 2003). The result is no different here, particularly where it is a third party claiming that the disciplinary rule renders it difficult to find lawyers willing to bring claims against judges in state court. Coupled with the fact that the League appears to have had little trouble finding a lawyer willing to make serious charges against a former Chief Justice in this case, the fact that Rule 8.2(a) restricts only false statements and statements made with reckless disregard to their truth or falsity causes Plaintiff's claims regarding the effect of the rule to be especially far-fetched.

F.3d 156, 168-69 (3d Cir. 2007) (citing cases).  Notwithstanding this relaxed standard in the narrow First Amendment context, the Court finds it has no material bearing in this case where Plaintiff seeks to challenge a statute the express terms of which (1) do not restrict Plaintiff's right to engage in free speech or petitioning activity in state court and (2) govern only speech by lawyers that is itself not protected by the First Amendment.

### 2. Plaintiff's Claims Are Not Ripe.

Article III also requires that courts adjudicate only ripe causes of action, and this ripeness doctrine requires that the challenge grow out of a "real, substantial controversy between parties" involving a "dispute definite and concrete."  Babbitt v. United Farm Workers National Union, 442 U.S. 289, 298 (1979) (citation omitted); Peachlum v. City of York, 333 F.3d 429, 434 (3d Cir. 2003).  Courts must initially determine whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, "of sufficient immediacy and reality" to justify judicial resolution.  Peachlum, 333 F.3d at 434 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)). The Supreme Court has incorporated the foregoing considerations into a two-step test for determining ripeness, which examines: (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." Peachlum, 333 F.3d at 434 (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).  Of particular relevance to this case, in order for a plaintiff to present a ripe action for declaratory relief, "there must be a real and immediate threat of enforcement against the plaintiff."  Salvation Army v. Dep't of Community Affairs, 919 F.2d 183, 192 (3d Cir. 1990) (internal quotation omitted) (emphasis added).

As with standing, courts have relaxed the ripeness requirement in the narrow class of

14

cases challenging statutes and regulations as violative of the First Amendment. See, e.g., Peachlum, 333 F.3d at 435 ("A First Amendment claim, particularly a facial challenge, is subject to a relaxed ripeness standard. . . . The courts have repeatedly shown solicitude for First Amendment claims because of concern that, even in the absence of a fully concrete dispute, unconstitutional statutes or ordinances tend to chill protected expression among those who forbear speaking because of the law's very existence.") (internal citations omitted); Presbytery of the Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1458 (3d Cir. 1994) (finding ripe plaintiffs' First Amendment challenge to state law prohibiting discrimination on the basis of sexual orientation).

Regardless of whether a relaxed ripeness standard is applied in this case, Plaintiff's claims are not ripe. Plaintiff's contention that its constitutional rights are being, or will be, violated is predicated on the most tenuous and unsupported speculation that some stray remarks made by the current Chief Justice of the Pennsylvania Supreme Court will somehow be used to misapply and enforce Rule 8.2(a) in a manner that will cause lawyers to become unwilling to file claims against judges in state court. Plaintiff fails sufficiently to allege that the League, any lawyer, or any third party faces a real, substantial, and immediate threat of enforcement – wrongful or otherwise – under Pennsylvania's Rules of Professional Conduct. Plaintiff's interpretation of Chief Justice Castille's alleged comments that "it is not proper to say that a Supreme Court justice fixed a case unless you can prove it," and "there are consequences to be paid when you cannot prove some of the things you say," appears to be the factor triggering Plaintiff's apprehension that the Disciplinary Defendants might begin enforcing Rule 8.2(a) more vigorously, thereby impairing Plaintiff's goal of filing lawsuits against judges in state court. (See

Am. Compl. ¶ 73.) Not only are Chief Justice Castille's alleged comments unofficial and without any legal significance, but they do not even mention the very disciplinary rule that Plaintiff is asking this Court to set aside as unconstitutional. Although Plaintiff may have divined from such a comment an implied threat of rule 8.2(a)'s application to its counsel, the Court finds these allegations far too conjectural – indeed, fanciful – to give rise to a cognizable Article III case or controversy.[9] Plaintiff insists that "[t]he mere threat to protected First Amendment speech is sufficient to present a ripe controversy." (Doc. No. 37, at 14.) But Plaintiff's own subjective and extremely speculative interpretation regarding the potential effect of the Chief Justice's comments, and the potential misuse of a disciplinary rule to infringe upon protected First Amendment activity, are <u>not</u> sufficient to present a ripe controversy.

Before closing, the Court notes that Plaintiff claims to be making both facial and as-applied challenges to Rule 8.2(a). Plaintiff's "as-applied" challenge is meritless because nothing in the amended complaint suggests that Rule 8.2(a) has been applied to the League or its lawyer. Plaintiff's facial challenge to the rule fails to state a claim under the First Amendment because Rule 8.2(a) only restricts speech against public officials that is false or made with reckless disregard for its truth or falsity. The Supreme Court has made clear that this sort of speech is not protected. <u>Garrison v. Louisiana</u>, 379 U.S. 64, 67 (1964) (First Amendment not violated where speaker is sanctioned for making a false statement regarding the conduct of public officials when it is demonstrated that the statement was made "with knowledge that it was false or with reckless

---

[9] In its brief in response, the conclusory and speculative nature of Plaintiff's assertions becomes even more clear. For example, despite Chief Justice Castille never mentioning Rule 8.2(a) or seeking to have disciplinary proceedings initiated against Plaintiff's lawyer, Plaintiff persists in referring to the Chief Justice's comments as "Rule 8.2(a) threats." (Doc. No. 37, at 7, 8, 10, 11, 12.)

disregard of whether it was false or not."). On its face, therefore, Rule 8.2(a) does not violate the First Amendment, and the Pennsylvania Supreme Court's own interpretation of the rule is consistent with the law. See Office of Disciplinary Counsel v. Price, 732 A.2d 599, 604 (Pa. 1999) (holding that Disciplinary Board must "present[] documentary evidence or testimony from the victims of the allegations stating that the allegations are false"); District Office of Disciplinary Counsel v. Surrick, 749 A.2d 441, 444 (Pa. 2000) (Disciplinary Board required to prove its allegations "by clear and satisfactory evidence").

In summary, the Court finds that Plaintiff has failed to present a cognizable case or controversy with respect to its claims against the Disciplinary Defendants because Plaintiff lacks standing to prosecute its challenge to a disciplinary rule that does not apply to the League. Furthermore, even if the League did have standing to challenge the rule, the case is not ripe as the League has failed to present a case of sufficient immediacy and reality to allow the Court to exercise jurisdiction over Plaintiff's claims. Finally, neither Plaintiff's "as-applied" or facial challenge to the constitutionality of Rule 8.2(a) states a claim. With Plaintiff already amending its complaint once, the Court finds that any further leave to amend would be improvident and wholly unwarranted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss Plaintiff's amended complaint will be granted and the case closed. An order consistent with this memorandum is attached.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, | : | Civil Action No. 1:08-CV-0971 |
| Plaintiff | : | (Chief Judge Kane) |
| v. | : | |
| RALPH J. CAPPY, et al., | : | |
| Defendants | : | |

# ORDER

AND NOW, this 26th day of June 2009, upon consideration of Defendants' motions to dismiss Plaintiff's amended complaint, and the Court finding good cause to grant the motions, and for the reasons set forth in the attached memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant Ralph J. Cappy's motion to dismiss (Doc. No. 25) is GRANTED.

2. The motion to dismiss filed by Paul J. Killion, Paul J. Burgoyne, and Raymond S. Wierciszewski (Doc. No. 33) is GRANTED.

3. Plaintiff shall not be granted leave to amend the complaint.

4. The Clerk of Court is directed to close the file.

/s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania